PEOPLE v ARENDA

Docket Nos. 65578, 65579. Argued June 3, 1981 (Calendar No. 15).—
Decided December 23, 1982. Rehearing denied 417 Mich 1105.

Mike T. Arenda was convicted by a jury in the Bay Circuit Court,
Leon R. Dardas, J., of three counts of first-degree criminal
sexual conduct with his son. The trial court admitted evidence
offered by the people of prior sexual acts between the defendant
and his son, but refused to admit evidence offered by the
defendant of prior sexual acts between the defendant's son and
other persons on the ground that admission of such evidence
was prohibited by statute. The Court of Appeals, D. C. Riley,
P.J., and R. B. Burns, J. (N. J. Kaufman, J., concurring in part
and dissenting in part), reversed the defendant's conviction on
the ground that the trial court erred in admitting the similar-
acts evidence offered by the people (Docket Nos. 78-2155, 78-
2156). The people appeal.

In an opinion by Justice Coleman, joined by Chief Justice
Fitzgerald and Justices Williams and Ryan, the Supreme Court
*held* that the statute is facially constitutional and, on the facts
of the case, that admission of the similar-acts evidence was not
error requiring reversal. The decision of the Court of Appeals is
reversed and the defendant's conviction reinstated.

1. The trial court prohibited the admission of evidence of
sexual conduct between the victim and persons other than the
defendant on the basis of the rape shield statute. That statute
is a legislative determination that, generally, evidence of such
conduct is irrelevant and that, even where it is minimally
relevant, it carries a danger of unfairly prejudicing and mis-
leading the jury. Avoidance of the danger is a legitimate state

References for Points in Headnotes
[1, 4-6] 21A Am Jur 2d, Criminal Law § 958.
[1-4, 6] 65 Am Jur 2d, Rape §§ 82, 83, 85, 86.
    Constitutionality of "rape shield" statute restricting use of evidence
    of victim's sexual experiences. 1 ALR4th 283.
    Modern status of admissibility, in forcible rape prosecution, of
    complainant's general reputation for unchastity. 95 ALR3d 1181.
    Modern status of admissibility, in forcible rape prosecution, of
    complainant's prior sexual acts. 94 ALR3d 257.

interest in a criminal trial and furthers the reporting and prosecution of persons accused of criminal sexual conduct. The prohibitions in the statute also protect legitimate expectations of privacy. Given the minimal relevance of such evidence in most cases, the prohibitions do not deny or significantly diminish the defendant's right of confrontation.

2. The defendant's contention that the evidence should have been admitted to explain the victim's ability to describe the sexual acts which allegedly occurred and to dispel any inference that the ability resulted from experiences with the defendant is insufficient to allow admission. The knowledge of the victim, unlike pregnancy, semen, or disease, need not have been acquired solely through sexual conduct. Any relevancy of the manner in which the knowledge was acquired would be minimal, and its potential for prejudice would be great. To have minuscule probative value, the evidence would have to refer not only to sexual conduct, but also to the details of such conduct. These details would then have to be compared to details in trial testimony to demonstrate a source of knowledge. There would be a real danger of misleading the jury and an obvious invasion of the privacy of the victim.

3. Striking down the statutory prohibitions as they relate to the issue in this case would permit the admission of like evidence in every case. In almost every instance, the victim testifies to the conduct that occurred and so could be exposed to cross-examination on these points.

4. The record does not provide a basis for concluding that the defendant was denied his right to confrontation. No showing was made that any evidence which would have been excluded by the trial court's order even existed, and, in this case, the source of the victim's ability to describe the sexual act was immaterial.

Justice Kavanagh, joined by Justice Levin, dissenting, would hold that the section of the Penal Code which absolutely prohibits a defendant charged with criminal sexual conduct from introducing evidence of sexual conduct between the victim and a person other than the defendant unconstitutionally denies the defendant his right to confront witnesses and his right to present witnesses in his behalf. Under the circumstances of the case, the evidence of prior sexual conduct offered by both parties was necessary and should have been admitted.

1. Evidence of a defendant's similar acts is admissible where the crime charged is a sexual offense and the acts tend to show familiarity between the defendant and the victim. The evidence is more probative than prejudicial, forming a link in the chain

of testimony without which the jury would be unable properly to appreciate testimony offered in reference to the crime charged. In this case, the people intended to show that the victim's ability to describe explicitly the charged act of fellatio was a result of having been forced by the defendant to perform the act and that the charged offenses were not isolated occurrences, but rather were the culmination of a series of similar occurrences and thus were not as incredible as might appear in isolation.

2. The relevancy and the prejudicial effect of the evidence of the victim's prior sexual conduct with others offered by the defendant are determined by the issues raised during trial and not by the crimes charged. The categorical legislative exclusion of the evidence does not allow for such a determination. Thus where, as here, a determination with respect to the evidence otherwise would be made in the defendant's favor, the defendant is denied his right to present a defense by operation of the statute.

3. The interest of the state in promoting efficient prosecution of persons accused of criminal sexual conduct, while not warranting such categorical exclusion of evidence, is sufficient to require a consideration of that interest during trial and a balancing of the interest against the defendant's right to present his defense. Therefore, in each criminal sexual conduct trial in which a defendant offers evidence of the alleged victim's prior sexual conduct with anyone other than the defendant, an offer of proof must be made *in camera* to afford the trial court an opportunity to weigh the probative value of the evidence against any prejudicial effect.

97 Mich App 678; 296 NW2d 143 (1980) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — CONSTITUTIONAL
   LAW — EVIDENCE — SIMILAR ACTS.

   The section of the Penal Code which excludes evidence of sexual conduct by the victim with persons other than the defendant in a trial for criminal sexual conduct represents a legitimate legislative determination that inquiries into such conduct, even where minimally relevant, carry a danger of misleading a jury, tend to deter the reporting and prosecution of such crimes, and invade the victim's legitimate expectation of privacy, and the prohibition of such evidence does not deny or significantly diminish a defendant's right of confrontation (US Const, Am VI; MCL 750.520j; MSA 28.788[10]).

2. Criminal Law — Criminal Sexual Conduct — Evidence — Similar Acts — Relevancy.

The relevancy of evidence of the source of a criminal sexual conduct victim's knowledge of specific sexual acts generally will be minimal and its potential for prejudice generally will be great; unlike pregnancy, semen, or disease, the knowledge need not be acquired solely through sexual contact, and thus does not fall within the exceptions for exclusion of evidence of the victim's sexual contact with persons other than the defendant (MCL 750.520j; MSA 28.788[10]).

DISSENTING OPINION BY KAVANAGH, J.

3. Criminal Law — Criminal Sexual Conduct — Evidence — Similar Acts — Admissibility.

*Generally, evidence of a criminal defendant's similar acts is not admissible to prove that he acted in like manner on a particular occasion; however, such evidence may be admitted if it is material and probative where the crime charged is a sexual offense and the similar act tends to show familiarity between the defendant and the victim (MCL 768.27; MSA 28.1050; MRE 404[b]).*

4. Criminal Law — Criminal Sexual Conduct — Constitutional Law — Right to Present Defense.

*The section of the Penal Code which absolutely prohibits a criminal defendant charged with criminal sexual conduct from introducing evidence of sexual conduct between the alleged victim and anyone other than the defendant except to show the source or origin of semen, pregnancy, or disease unconstitutionally denies the defendant his right to confront witnesses and his right to present witnesses in his behalf (US Const, Am VI; MCL 750.520j; MSA 28.788[10]).*

5. Criminal Law — Constitutional Law — Evidence — Right to Present Defense.

*A criminal defendant's fundamental right to confront and cross-examine witnesses and to present evidence in his defense is not absolute, and certain evidence or lines of confrontation may be excluded where irrelevant or more prejudicial than probative; however, relevancy and prejudicial effect are determined by the issues raised during trial and not by the crime charged, and a mechanistic application of arbitrary rules which absolutely prohibit whole categories of evidence without determining its relevancy or weighing its probative value is violative of the defendant's right (US Const, Am VI).*

6. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — CONSTITUTIONAL
LAW — RIGHT TO PRESENT DEFENSE.

> *In trials for criminal sexual conduct where the defendant intends
> to offer evidence of the victim's past sexual conduct with the
> defendant, specific instances of the victim's sexual activity
> showing the source or origin of semen, pregnancy, or disease, or
> the victim's prior sexual conduct with anyone other than the
> defendant which is material to a fact in issue and is constitu-
> tionally required to be admitted, an offer of proof must be made
> in camera to afford the trial court an opportunity to weigh the
> probative value of the evidence against any prejudicial effect,
> and thus to balance the interest of the state in promoting
> efficient prosecution of such cases against the defendant's right
> to confront witnesses and to present his defense (MRE 412).*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *George B. Mullison,*
Prosecuting Attorney, and *Thomas J. Bleau,* Assis-
tant Prosecuting Attorney, for the people.

*Lynn Chard,* Assistant State Appellate Defender,
for the defendant.

COLEMAN, J. Defendant was convicted by a jury
of three counts of criminal sexual conduct in the
first degree.[1] The Court of Appeals reversed the
convictions based on the erroneous admission of
similar-acts evidence.[2] Justice KAVANAGH's opinion
would hold that the similar-acts evidence was
properly admitted but that reversal is required
because of the erroneous exclusion of certain evi-
dence offered by defendant.

Our conclusions are that MCL 750.520j; MSA
28.788(10), the rape-shield law, is not unconstitu-
tional and that reversal is not required on the
facts before us in this case.

---

[1] MCL 750.520b; MSA 28.788(2).

[2] *People v Arenda,* 97 Mich App 678; 296 NW2d 143 (1980).

I

The charges against defendant arose out of incidents involving an eight-year-old boy. The prosecutor filed a motion *in limine,* based on the rape-shield law, to prohibit the admission of any evidence of sexual conduct between the victim and any person other than defendant. The prosecutor stated that he had no knowledge or evidence of such conduct, but that defense counsel indicated that he might bring out such evidence at trial.

Defendant claimed that evidence of sexual conduct was relevant and admissible to explain the witness's ability to describe vividly and accurately the sexual acts that allegedly occurred. Because of the complainant's age and his detailed description of events, defendant wanted to establish the right to introduce evidence, if any, of the complainant's sexual conduct with others.

The trial judge granted the motion to exclude this evidence.

Despite the earlier ruling, defendant was not completely foreclosed from inquiring into the complainant's sources of knowledge about sexual conduct. During cross-examination, the complainant was asked if he had witnessed his friends or others engage in sexual activity. He answered "No". He was asked if he had engaged in this activity with someone other than defendant. Again, he answered in the negative. After a similar question was asked and the same answer received, the trial judge cautioned defendant not to pursue this questioning in light of the prior order prohibiting it.

The trial judge's ruling prohibiting the admis-

sion of evidence of sexual conduct between the
victim and persons other than defendant was
based upon the rape-shield statute. MCL 750.520j;
MSA 28.788(10) provides:

"(1) Evidence of specific instances of the victim's
sexual conduct, opinion evidence of the victim's sexual
conduct, and reputation evidence of the victim's sexual
conduct shall not be admitted under sections 520b to
520g unless and only to the extent that the judge finds
that the following proposed evidence is material to a
fact at issue in the case and that its inflammatory or
prejudicial nature does not outweigh its probative
value:
"(a) Evidence of the victim's past sexual conduct with
the actor.
"(b) Evidence of specific instances of sexual activity
showing the source or origin of semen, pregnancy, or
disease.
"(2) If the defendant proposes to offer evidence de-
scribed in subsection (1)(a) or (b), the defendant within
10 days after the arraignment on the information shall
file a written motion and offer of proof. The court may
order an in camera hearing to determine whether the
proposed evidence is admissible under subsection (1). If
new information is discovered during the course of the
trial that may make the evidence described in subsec-
tion (1)(a) or (b) admissible, the judge may order an in
camera hearing to determine. whether the proposed
evidence is admissible under subsection (1)."

## II

Defendant contends that these statutory prohibi-
tions infringe upon his Sixth Amendment right of
confrontation, see *Davis v Alaska,* 415 US 308; 94
S Ct 1105; 39 L Ed 2d 347 (1974), *Chambers v
Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d
297 (1973).

In *Chambers, supra,* 295, the Supreme Court stated:

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' *Dutton v Evans,* 400 US 74, 89 [91 S Ct 210; 27 L Ed 2d 213] (1970), *Bruton v United States,* 391 US 123, 135-137 [88 S Ct 1620; 20 L Ed 2d 476] (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer v Texas,* 380 US 400, 405 [85 S Ct 1065; 13 L Ed 2d 923] (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *E.g., Mancusi v Stubbs,* 408 US 204 [92 S Ct 2308; 33 L Ed 2d 293] (1972). But its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined. *Berger v California,* 393 US 314, 315 [89 S Ct 540; 21 L Ed 2d 508] (1969)."

The right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant *issues.*[3] It may bow to accommodate other legitimate interests in the criminal trial process, see *Mancusi, supra,* and other social interests, see *United States v Nixon,* 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974).

The rape-shield law is one part of a relatively recent revision of our penal laws relating to sexual conduct, 1974 PA 266. This revision was a reflection of a nationwide concern about the prosecution of sexual conduct cases. The law is similar to

---

[3] See *Jenkins v Moore,* 395 F Supp 1336 (ED Tenn, 1975), aff'd 513 F2d 631 (CA 6, 1975); Westen, *Compulsory Process II,* 74 Mich L Rev 191, 205 (1975).

provisions recently enacted by many other states[4] and by the federal government.[5] In *People v Khan*, 80 Mich App 605, 613-614; 264 NW2d 360 (1978), the Court of Appeals discussed the public policies underlying the law, stating:

"Returning to MCL 750.520j(1); MSA 28.788(10)(1), we observe that this provision—an integral part of Michigan's criminal sexual conduct act—represents an explicit legislative decision to eliminate trial practices under former law which had effectually frustrated society's vital interests in the prosecution of sexual crimes. In the past, countless victims, already scarred by the emotional (and often physical) trauma of rape, refused to report the crime or testify for fear that the trial proceedings would veer from an impartial examination of the accused's conduct on the date in question and instead take on aspects of an inquisition in which complainant would be required to acknowledge and justify her sexual past.

\* \* \*

" 'Primarily, \* \* \* [rape shield statutes] serve the substantial interests of the state in guarding the complainant's sexual privacy and protecting her from undue harassment. In line with these goals, they encourage the victim to report the assault and assist in bringing the offender to justice by testifying against him in court. Insofar as the laws in fact increase the number of prosecutions, they support the government's aim of deterring would-be rapists as well as its interest in going after actual suspects. These statutes are also intended, however, to bar evidence that may distract and inflame jurors and is of only arguable probative worth. To the degree that they aid in achieving just convictions and preventing acquittals based on prejudice, they naturally further the truth-determining func-

---

[4] For a compilation of state statutes, see Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U of Pa L Rev 544 (1980).

[5] FRE 412.

tion of trials in addition to more collateral ends.'"
(Emphasis added.)

The rape-shield law, with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons other than defendant. Although such evidence was admissible at common law in relation to certain issues, this practice has repeatedly been drawn into question. The courts, with increasing frequency, have recognized the minimal relevance of this evidence, see Anno: *Modern status of admissibility, in statutory rape prosecution, of complainant's prior sexual acts or general reputation for unchastity,* 90 ALR3d 1300, and Anno: *Modern status of admissibility in forcible rape prosecution, of complainant's prior sexual acts,* 94 ALR3d 257.

The prohibitions contained in the rape-shield law represent a legislative determination that, in most cases, such evidence is irrelevant.[6] This determination does not lack a rational basis and is not unreasonable. In fact, it is consistent with the results reached by the judiciary in resolving this issue, see *State ex rel Pope v Mohave Superior Court,* 113 Ariz 22; 545 P2d 946 (1976).

The prohibitions in the law are also a reflection of the legislative determination that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. Avoidance of these dangers is a legitimate interest in the criminal trial process, see MRE 403. The prohibition indirectly furthers the same interests by removing unnecessary deterrents to the reporting and prosecution of crimes.

At the same time, the prohibitions protect legitimate expectations of privacy. Although this inter-

---

[6] Colo Rev Stat § 18-3-407 (1978).

est may not be as compelling as those mentioned above, it is entitled to consideration, see *Branzburg v Hayes,* 408 US 665; 92 S Ct 2646; 33 L Ed 2d 626 (1972).

The interests protected and furthered by the rape-shield law are significant ones. Given the minimal relevance of such evidence in most cases, the prohibitions do not deny or significantly diminish defendant's right of confrontation. Defendant has not demonstrated that the statute is unconstitutional. This conclusion is consistent with the result reached in many other jurisdictions.[7]

### III

In the instant case, defendant raises an ingenious argument supporting the admission of this evidence. He sought to admit evidence of the victim's possible sexual conduct with others to explain the victim's ability to describe the sexual acts that allegedly occurred and to dispel any inference that this ability resulted from experiences with defendant. He argues that this victim's

[7] See, *e.g., Pratt v Parratt,* 615 F2d 486 (CA 8, 1980), *Turley v State,* 356 So 2d 1238 (Ala Crim App, 1978), *Marion v State,* 267 Ark 345; 590 SW2d 288 (1979), *People v Blackburn,* 56 Cal App 3d 685; 128 Cal Rptr 864 (1976), *People v McKenna,* 196 Colo 367; 585 P2d 275 (1978), *Roberts v State,* 268 Ind 127; 373 NE2d 1103 (1978), *People v Cornes,* 80 Ill App 3d 166; 399 NE2d 1346 (1980), *State v Ball,* 262 NW2d 278 (Iowa, 1978), *State v Blue,* 225 Kan 576; 592 P2d 897 (1979), *Smith v Commonwealth,* 566 SW2d 181 (Ky App, 1978), *State v Dawson,* 392 So 2d 445 (La, 1980), *Cantrell v State,* 50 Md App 331; 437 A2d 696 (1981), *State v Hamilton,* 289 NW2d 470 (Minn, 1979), *State v Howard,* 121 NH 53; 426 A2d 457 (1981), *State v Ryan,* 157 NJ Super 121; 384 A2d 570 (1978), *State v Herrera,* 92 NM 7; 582 P2d 384 (Ct App, 1978), *People v Mandel,* 61 AD2d 563; 403 NYS2d 63 (1978), *rev'd on other grounds* 48 NY2d 952; 425 NYS2d 63; 401 NE2d 185 (1979), *State v Fortney,* 301 NC 31; 269 SE2d 110 (1980), *State v Piper,* 261 NW2d 650 (ND, 1977), *State v Gardner,* 59 Ohio St 2d 14; 391 NE2d 337 (1979), *Cameron v State,* 561 P2d 118 (Okla Crim App, 1977), *State v Blake,* 53 Or App 906; 633 P2d 831 (1981), *State v McCoy,* 274 SC 70; 261 SE2d 159 (1979), *Washington v Cosden,* 18 Wash App 213; 568 P2d 802 (1977), *State v Green,* 260 SE2d 257 (W Va, 1979).

ability to describe the sexual acts corroborates and supports the claim that the acts occurred. He continues, saying that this evidence is similar to evidence of pregnancy, semen or disease in that it is verifiable and some indication of sexual activity. Therefore, defendant urges that because evidence of sexual conduct is admissible to show the origin of pregnancy, semen and disease, so should it be admissible in this case to show the origin of the victim's knowledge. (It is notable that defendant offered no proofs while arguing on this theoretical level.)

Research into the growing body of case law discussing rape-shield laws failed to reveal any case in which this specific argument was raised.[8]

In most cases, the relevancy, if any, of such evidence will be minimal. A jury is unlikely to consider a witness's ability to describe sexual conduct as an independent factor supporting a conviction. This ability, unlike pregnancy, semen or disease, need not be acquired solely through sexual conduct.

In contrast, the potential prejudice from the admission of this evidence is great. First, in order for it to have minuscule probative value, it would have to refer not only to the existence of sexual conduct but also to the *details* of such conduct. To demonstrate a source of knowledge the details of such conduct would have to be compared to the details as presented at trial. There would be a real danger of misleading the jury. There would be an obvious invasion of the  victim's privacy.

---

[8] Defendant cites one other case in which this issue was raised, *State v Howard,* 121 NH 53; 426 A2d 457 (1981).

Second, striking down the prohibitions as they relate to the issue of this case would permit the admission of evidence of a like nature in every case. In almost every instance, the victim testifies to the conduct that occurred and so could be exposed to cross-examination on these points. A blanket exception for this issue would swallow the rule.

Furthermore, the only cases in which such evidence can arguably have more than a *de minimis* probative value are ones involving young or apparently inexperienced victims. These children and others are the ones who are most likely to be adversely affected by unwarranted and unreasonable cross-examination into these areas. They are among the persons whom the statute was designed to protect.

Finally, in most of the cases in which the source of the victim's ability to describe a sexual act may be relevant, there are other means by which one can inquire into that source of knowledge without necessarily producing evidence of sexual conduct with others. Counsel could inquire whether the victim had any experiences (*e.g.,* reading a book, seeing a movie, conversing with others, schoolwork or witnessing others engaged in such activity) which aided him or her in describing the conduct that is alleged.

Therefore, we are persuaded that the prohibitions in the rape-shield law will not deny a defendant's right of confrontation in the overwhelming majority of cases and, in particular, not in this case. If such a set of facts arises as to place in question the constitutional application of the rape-shield law, it can be addressed.

IV

Applying these standards to the record before us, we conclude that reversal is not required. Although the trial judge granted the motion *in limine,* no offer of proof was made showing the existence of relevant evidence on this point, see MRE 103(a)(2), and *Grondziak v Grondziak,* 383 Mich 543; 177 NW2d 157 (1970). A review of the record fails to show that the prosecutor introduced evidence intended to prove that the victim's knowledge came from defendant's conduct. The defendant was permitted to cross-examine the victim as to possible sources of knowledge other than the alleged conduct. Only when defendant repeatedly asked the victim about possible sexual conduct with others, and received negative responses, did the trial judge prohibit further inquiries. Absent an offer of proof, one can only speculate whether defendant had other witnesses who would testify to acts of sexual conduct between the victim and persons other than defendant.

Thus, there is no basis on this record for the conclusion that defendant was denied the right of confrontation. Unlike *Davis, supra,* and *Chambers, supra,* there is no showing in this case that the excluded evidence even existed. Further, the issue in dispute in this case is more collateral than the issue involved in *Davis.* Although the "bias" of a witness or complainant is almost always material, the source of one's ability to describe a sexual act is seldom material.

Nor does the prosecutor's closing argument necessitate a different conclusion. In this case, defendant asked the victim about prior activities with others and received a negative response. Thus, the

prosecutor's comment was supported by the evidence.

In conclusion, we find the statute to be facially constitutional, and constitutional as applied to these facts. There was no error in the trial which requires reversal.

Therefore, we reverse the decision of the Court of Appeals and reinstate defendant's conviction.

FITZGERALD, C.J., and WILLIAMS and RYAN, JJ., concurred with COLEMAN, J.

KAVANAGH, J. This case involves the admissibility of similar-acts evidence in a criminal trial. Defendant was convicted of three counts of first-degree criminal sexual conduct[1] arising out of alleged sexual assaults upon his eight-year-old son during which the boy was made to perform acts of fellatio. The trial court admitted testimony offered by the prosecutor of prior acts of fellatio between defendant and the victim, relying on *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), but refused to admit testimony offered by the defendant of prior acts of fellatio between the victim and other persons, relying on MCL 750.520j; MSA 28.788(10). The Court of Appeals reversed defendant's conviction, holding that it was error to admit the similar-acts evidence offered by the prosecutor. *People v Arenda,* 97 Mich App 678; 296 NW2d 143 (1980). We recognize the need for admissibility in both instances and, accordingly, reverse the decisions of the Court of Appeals and the trial court and remand for a new trial.

As a general rule, evidence of prior bad acts is not admissible to prove that the defendant acted

---

[1] MCL 750.520b; MSA 28.788(2).

similarly on the occasion in question because the risk is too great that the factfinder will be diverted from an objective appraisal of defendant's conduct at the time in question and convict him as a "bad man". There are two major exceptions to this general rule. The first exception is set forth in MCL 768.27; MSA 28.1050, and provides that "where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material" evidence of similar acts may be admitted if probative of such material matters.[2]

The second exception had its genesis in the common law and is peculiar to sexual offenses. First articulated in *People v Jenness,* 5 Mich 305 (1858), and most recently upheld in *People v Der-Martzex,* 390 Mich 410; 213 NW2d 97 (1973), this exception is a recognition that the probative value of similar-acts evidence outweighs the risk of unfair prejudice "where the crime charged is a sexual offense and the other acts tend to show similar familiarity between the defendant and the person with whom he allegedly committed the charged offense". 390 Mich 413. As stated in *Jenness:*

"[W]here a witness has testified to a fact or transac-

---

[2] MCL 768.27; MSA 28.1050 reads in its entirety:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

A similar rule is presently embodied in MRE 404(b). The Michigan Rules of Evidence did not become effective until March 1, 1978, and thus were not applicable during the trial of the instant case in January, 1978.

tion which, standing alone and entirely unconnected with anything which led to or brought it about, would appear in any degree unnatural or improbable in itself, without reference to the facts preceding and inducing the principal transaction, and which, if proved, would render it more natural and probable; *such* previous facts are not only admissible and relevant, but they constitute a necessary part of such principal transaction—a link in the chain of testimony, without which it would be impossible for the jury properly to appreciate the testimony in reference to such principal transaction." 5 Mich 323-324 (emphasis supplied).

In the instant action, the prosecutor elicited testimony from the victim that defendant had forced him to perform acts of fellatio on numerous occasions prior to those in question. The prosecutor offered this evidence in an attempt to show that the youthful victim was able to describe in detail an act of fellatio only because he had in fact been forced by defendant to commit it. The prosecutor also intended to show that the charged offenses were not isolated occurrences but rather were the culmination of a series of similar occurrences and thus were not as incredible as might appear in isolation. This is precisely the situation in which similar-acts evidence may be admitted under the common-law exception.[3] The trial court properly admitted the evidence offered by the prosecutor.

The evidence offered by defendant presents a more difficult issue. At trial, the prosecutor introduced evidence of prior sexual conduct between the victim and defendant to show that the ability of the youthful victim to explicitly describe fellatio was a result of having been forced by defendant to

[3] See, also, *People v Clark,* 33 Mich 112 (1876); *Hall v People,* 47 Mich 636; 11 NW 414 (1882); *People v Skutt,* 96 Mich 449; 56 NW 11 (1893); *People v Swift,* 172 Mich 473; 138 NW 662 (1912); *People v Hammer,* 98 Mich App 471; 296 NW2d 283 (1980); *People v Bailey,* 103 Mich App 619; 302 NW2d 924 (1981).

perform it. Defendant attempted to rebut this evidence by showing that the victim's explicit knowledge of fellatio was indeed a result of actual performance, but with someone other than the defendant. Defendant's attorney was precluded from pursuing this line of questioning by the court's pretrial ruling on the prosecutor's motion *in limine* to prohibit any reference during trial to prior sexual conduct between the victim and anyone other than the defendant. The court's ruling was based on MCL 750.520j; MSA 28.788(10) which expressly prohibits the introduction of evidence of the victim's prior sexual conduct with anyone other than the defendant except to show the source or origin of semen, pregnancy, or disease.[4] During the hearing on the pretrial motion, defendant's attorney argued that this statutory prohibition violated defendant's constitutional right to confrontation, but the court refused to "fly in the face" of the statute. When defendant's attorney attempted to pursue this line of questioning at trial, notwithstanding the pretrial ruling, the

[4] MCL 750.520j; MSA 28.788(10) reads in its entirety:

"(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a) Evidence of the victim's past sexual conduct with the actor.

"(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

"(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)."

bench objected *sua sponte* and prohibited him from doing so.

On cross-appeal, defendant avers that MCL 750.520j; MSA 28.788(10) is unconstitutional because it infringes his Sixth Amendment rights to confront witnesses and to present a defense.[5]

The Sixth Amendment confrontation clause guarantees all criminal defendants the right to cross-examine witnesses against them, *Mattox v United States,* 156 US 237; 15 S Ct 337; 39 L Ed 409 (1895), and the compulsory process clause guarantees all criminal defendants the right to present witnesses in their defense. *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). Collectively, these clauses guarantee all criminal defendants the right to present a defense. *Washington v Texas; Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

MCL 750.520j; MSA 28.788(10) singles out criminal sexual conduct defendants and absolutely prohibits them from introducing evidence of sexual conduct between the victim and anyone other than the defendant except to show the source or origin of semen, pregnancy, or disease. The defendant claims that the Sixth Amendment guarantees all criminal defendants the same right to present evidence regardless of the crime charged.

The Sixth Amendment right to present evidence in one's defense is limited to evidence which is relevant and not unduly prejudicial. *Washington v Texas, supra; Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Because MCL 750.520j; MSA 28.788(10) restricts a defendant's right to present evidence in his defense by exclud-

[5] US Const, Am VI; applicable to the states through the Fourteenth Amendment. US Const, Am XIV. *Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965).

ing a whole category of evidence, it can pass
constitutional muster only if the evidence pre-
cluded is irrelevant or more prejudicial than pro-
bative.

The prosecutor argues that this statute is consti-
tutional because it is a legitimate legislative deter-
mination that evidence of the prior sexual conduct
of a victim of criminal sexual conduct is more
prejudicial than probative. This argument begs the
question. The relevancy and prejudicial effect of
evidence are determined by the issues raised at
trial, not by the crime charged. Thus, this categori-
cal legislative determination of prejudice is not
controlling.

On three occasions, the United States Supreme
Court has reviewed state evidentiary rules and
found them to be violative of Sixth Amendment
rights. In *Washington v Texas, supra,* the Court
struck down the application of two Texas statutes[6]
which prohibited criminal defendants from using
the testimony of co-participants in the charged
crime in their own behalf. In holding that the
Sixth Amendment right to have compulsory pro-
cess for obtaining witnesses is so fundamental to a
fair trial that it applies to all state criminal trials
through the Fourteenth Amendment, the Court
found the Texas statutes to be violative of that
right, reasoning:

"[I]t could hardly be argued that a State would not

[6] "Persons charged as principals, accomplices or accessories whether
in the same or by different indictments, can not be introduced as
witnesses for one another, but they may claim a severance, and if one
or more be acquitted they may testify in behalf of the others." Tex
Penal Code, art 82.

"Persons charged as principals, accomplices or accessories, whether
in the same or different indictments, cannot be introduced as wit-
nesses for one another, but they may claim a severance; and, if any
one or more be acquitted, or the prosecution against them be dis-
missed, they may testify in behalf of the others." Tex Code Crim Proc,
art 711 (1925).

violate the [compulsory process] clause if it made all defense testimony inadmissible as a matter of procedural law. It is difficult to see how the Constitution is any less violated by *arbitrary rules that prevent whole categories of defense witnesses from testifying* on the basis of *a priori* categories that presume them unworthy of belief." 388 US 22. (Emphasis added.)

In *Chambers v Mississippi, supra,* the Court struck down the application of a state's witness voucher rule and the hearsay rule which prevented a defendant from introducing evidence that someone else committed the crime with which he was charged. In *Chambers,* one McDonald had confessed prior to trial to having committed the homicide with which defendant was charged but recanted when questioned at defendant's preliminary examination. At trial, defendant called McDonald as a witness and entered his prior sworn confession into evidence. On cross-examination, the state elicited from McDonald the fact that he had repudiated his prior confession and additional testimony that he did not commit the homicide in question. Because of the witness voucher rule defendant was required to take the testimony given by his own witness at trial.[7] Defendant was further prevented by the state's hearsay rule from introducing the testimony of other witnesses to whom McDonald had made his prior confession. The United States Supreme Court recognized the inhibiting effect of these state rules on the defendant's Sixth Amendment rights and stated:

"Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal

[7] The trial court refused to declare McDonald an adverse witness. 410 US 291.

trial process * * * But its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined." 410 US 295. (Citations omitted.)

In examining the competing governmental interests in the voucher rule, the Court concluded that "it bears little present relationship to the realities of the criminal process." 410 US 296. With respect to the hearsay rule, the Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule *may not be applied mechanistically* to defeat the ends of justice." 410 US 302. (Emphasis added.)

In *Davis v Alaska, supra,* the Court held that two state statutes prohibiting reference during trial to a witness's juvenile criminal record violated the defendant's Sixth Amendment right to confrontation.[8] The defendant was charged with burglary and grand larceny. At trial, the defendant was precluded from introducing evidence showing that the prosecutor's chief witness, who had previously identified defendant at a photo and corporeal lineup, was on probation from juvenile criminal proceedings and therefore was testifying in favor of the prosecution to avoid probation revocation. In reversing the defendant's conviction, the Court stated:

---

[8] Alaska Rule of Children's Procedure 23 provides:

"No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of juvenile jurisdiction except for use in a presentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate."

Alaska Stat § 47.10.080(g) (1979) provides in pertinent part:

"The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceedings in any other court * * *."

"The claim is made that the State has an important interest in protecting the anonymity of juvenile offenders and that this interest outweighs any competing interest the petitioners might have in cross examining [the prosecution's witness] about his being on probation.

"* * * Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry.

*   *   *

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. * * * [T]he State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." 415 US 319-320.

These decisions reveal that the fundamental right to present evidence in one's own defense may not be inhibited by the mechanistic application of arbitrary rules which prevent whole categories of defense witnesses from testifying.

We recognize the purpose of MCL 750.520j; MSA 28.788(10) to be the encouragement of prosecution for criminal sexual conduct by assuring victims that their sexual past will not be held to public scrutiny. We have no objection to the purpose of the statute; however, that purpose does not justify the exclusion of a whole category of evidence in all cases. There can be no such absolute exclusion to the detriment of a fundamental right.

If the statute is, as the prosecutor argues, a legislative determination that evidence of a victim's sexual conduct with persons other than the defendant is always more prejudicial than probative, the prejudice with which the Legislature is concerned is prejudice to the criminal justice system resulting from the refusal of criminal sexual

conduct victims to report criminal acts and assist in their prosecution. This prejudice is altogether different from the prejudice required to exclude relevant evidence—the damage of arousing the jury's emotions, distracting the jury from the main issues, consumption of undue time, or unfair surprise.[9] This prejudice can be effectively recognized and weighed only in relation to the issues which arise during a given trial. When viewed in light of a criminal defendant's fundamental right to present evidence, prejudice does not admit of categorical definition and absolute exclusion.

While not warranting a categorical exclusion, the interest of the state in promoting efficient prosecution of criminal sexual conduct is sufficient to require a consideration of that interest in each trial and a balancing of it against defendant's Sixth Amendment rights. We would therefore hold that in each criminal sexual conduct trial wherein the defendant intends to introduce evidence of the victim's prior sexual conduct with anyone other than the defendant, an offer of proof must be made in an *in camera* hearing wherein the trial judge can properly weigh the probative value of such evidence against any prejudicial effect.

We would hold MCL 750.520j; MSA 28.788(10) unconstitutional. We would reverse the decision of the Court of Appeals, and remand to the trial court for retrial.

Levin, J., concurred with Kavanagh, J.

Riley, J., took no part in the decision of this case.

---

[9] See MRE 403; McCormick, Evidence (2d ed), § 185, p 434.